**NICHOLAS M. WAJDA**
Nevada State Bar No. 11480
Law Offices of Nicholas M. Wajda, Esq./Wajda Law Group, APC
871 Coronado Center Drive, Suite 200
Henderson, NV 89052
Telephone: 702-900-6339
Email: nick@wajdalawgroup.com
*Attorney for the Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| **BRIAN VANDEVELDE**<br><br>Plaintiff,<br><br>v.<br><br>**BANK OF AMERICA**, N.A.<br><br>Defendant. | **CASE NO.**:<br><br>**COMPLAINT FOR DAMAGES**:<br><br>1. Violation of the Telephone Consumer Protection Act<br>2. Invasion of Privacy – Intrusion Upon Seclusion<br><br>**JURY TRIAL DEMANDED** |

NOW comes BRIAN VANDEVELDE ("Plaintiff"), by and through the undersigned attorney, complaining as to the conduct of BANK OF AMERICA, N.A. ("Defendant") as follows:

### NATURE OF ACTION

1. Plaintiff brings this action for damages pursuant to the Telephone Consumer Protection Act 47 U.S.C. §227, *et seq.* (hereinafter "TCPA"), which prohibits the use of automated dialing equipment when making calls to consumers, and for Invasion of Privacy – Intrusion upon Seclusion, as derived from §652B of the Restatement (Second) of Torts, which prohibits an intentional intrusion, "physically or otherwise, upon the solitude or seclusion of another…that would be highly offensive to a reasonable person.

1

2. Plaintiff brings this action against Defendant Bank of America, N.A. (hereinafter "Defendant" or "Bank of America") for its abusive and outrageous conduct in connection with debt collection activity, as Defendant contacted Plaintiff over 30 times after receiving a notice of attorney representation, all sent through certified mail.

3. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

4. The TCPA was designed to prevent calls like the ones described herein, and to protect the privacy of citizens like Plaintiff, and by enacting the TCPA, Congress intended to give consumers a choice as to how corporate entities may contact them and to prevent the nuisance associated with automated or prerecorded calls.

## JURISDICTION & VENUE

5. Subject matter jurisdiction is conferred upon this Court by 28 U,S.C. §§ 1331, 1337 and 1367, and 15 U.S.C. § 1681.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) as Defendant conducts business, and a substantial portion of the events or omissions giving rise to Plaintiff's claims occurred within the District of Nevada.

## PARTIES

7. Plaintiff is a consumer over eighteen (18) years of age residing in Las Vegas, Nevada which is within the District of Nevada.

8. Plaintiff is a natural person as defined by 47 U.S.C. § 153(39).

9. Defendant is a company with a principal place of business located at 100 North Tyron Street, Charlotte, North Carolina.  Defendant regularly uses mail, email, and telephone to collect from consumers on debts within the State of Nevada.

10. Defendant is a "person" as defined by U.S.C. § 153(39).

11. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, representatives and insurers at all times relevant to the instant action.

## **FACTUAL ALLEGATIONS**

12. Plaintiff reserves the right to amend the Complaint should pertinent facts become known at a later time.

13. Plaintiff is an unsophisticated consumer.

14. The instant action arises out of Defendant's attempt to collect upon an outstanding consumer debt, which Defendant claims is owed by the Plaintiff.

15. Plaintiff opened a credit card account issued by Bank of America sometime in early 2020.

16. The credit card account extended to Plaintiff was primarily for personal, family or household purposes.

17. Defendant has been attempting to collect on a debt that originated from monetary credit that was extended primarily for personal, family, or household purposes.

18. Because Plaintiff, a natural person allegedly obligated to pay money to Defendant rising from what Plaintiff is informed and believes was a consumer credit transaction.

19. Plaintiff is informed and believes Defendant is one who regularly collects or attempts to collect debts on behalf of themselves.

20. Plaintiff's account was an unsecured credit account and Plaintiff began making payments on the account soon after opening the account and making purchases/charges.

21. Plaintiff eventually became financially unable to continue making payments on his account.

22. Defendant began contacting Plaintiff to inquire about the status of the account and to collect payment.

23. Plaintiff subsequently retained counsel to assist in dealing with Defendant's account and to seek some type of financial relief.

24. Counsel for Plaintiff sent Defendant a certified letter confirming representation of Plaintiff and informing Defendant it was to no longer contact Plaintiff directly and all calls/letters/collection efforts were to no longer be directed at Plaintiff.

25. The contents of the letter also informed Defendant that Plaintiff was withdrawing his consent to be contacted on his cellular telephone.

26. Plaintiff's notice was sent to Defendant on March 18, 2021 via certified mail. Defendant received the certified notice on March 22, 2021

27. Defendant continued to call Plaintiff after the March 18, 2021 certified notice of representation and revocation of consent was sent.

28. Defendant diligently continued to call Plaintiff's cell phone multiple times each day.

29. Defendant would use an automatic dialing machine when placing the calls to Plaintiff.

30. Defendant would use a pre-recorded voice when calling Defendant.

31. Defendant would leave pre-recorded messages for Plaintiff.

32. Defendant's autodialing machine contains the capacity to randomly dial numbers.

33. Plaintiff was contacted repeatedly regarding non-payment of the debt owed to Defendant despite Defendant being notified Plaintiff had retained counsel to deal specifically with the debt owed to Defendant.

34. Defendant's calls were frequent in nature and continued despite receiving written notice Plaintiff was represented by an attorney and that all calls to Plaintiff's cellular telephone were to stop.

35. Plaintiff received over 30 pre-recorded calls after the March 18, 2021 certified letter was received by Defendant.

**DAMAGES**

36. Plaintiff suffered real and concrete harm because Defendant continued to contact him in this manner prohibited by the TCPA.

37. Defendant's knowing, willful, wanton and malicious conduct has severely impacted Plaintiff's daily life and general well=being.

38. Plaintiff has expended time and incurred costs consulting with his attorney as a result of Defendant's illegal actions.

39. Plaintiff has been unduly inconvenienced and harassed by Defendant's unlawful attempts to collect upon the subject debt.

## 1.  COUNT I – VIOLATIONS OF THE TELEPHONE CONSUMER PRPTECTIONS ACT

40. Plaintiff repeats and realleges paragraphs 1 through 39 as though fully set forth herein.

41. Defendant was informed Plaintiff revoked his consent to be contacted by Defendant in March of 2021.

42. Defendant called Plaintiff repeatedly since Plaintiff withdrew his consent to be contacted by an automatic dialing machine on his cellular telephone.

43. Defendant ignored the notice, sent through certified mail, and continued to contact Plaintiff on his cellular telephone.

44. The certified notice was unequivocal in its language regarding attorney representation and revocation of consent.

45. Consequently, Defendant had "actual" knowledge of its violation of the TCPA.

46. Alternatively, Defendant should have known its conduct violated the TCPA.

47. Defendant continued to use a pre-recorded voice when placing unauthorized calls to Plaintiff's cellular telephone.

48. Defendant would contact Plaintiff multiple times each day regarding payment on the accounts.

49. Defendant placed the above cited calls using an artificial or prerecorded voice to deliver the collection messages without Plaintiff's prior express consent.

50. Defendant contacted Plaintiff at least 30 (thirty) times after he revoked his consent to be contacted on his cellular telephone and informed Defendant he was represented by counsel.

51. Defendant Plaintiff was still contacted multiple times each day on his cellular telephone despite receiving notice of Plaintiff's revocation of consent.

52. These calls were made to Plaintiff's cellular telephone and were not calls for an emergency purposed as defined by 47 U.S.C. §227(b)(1)(A)(iii).

53. The calls Plaintiff received were pre-recorded or used an artificial voice.

54. Plaintiff expressly revoked any consent that may have previously been given to Defendant to be contacted by an automatic dialing machine in March of 2021.

55. The calls placed by Defendant were willful and made despite having knowledge that Plaintiff revoked his consent to be contacted by Defendant on his cellular telephone.

56. These telephone calls by Defendant, or its agent, violated 47 U.S.C. §227(b)(1)(A)(iii).

57. As a result of Defendant's violation of the TCPA, Plaintiff is entitled to actual, statutory and treble damages pursuant to 47 U.S.C. §227(b)(3) and in an amount to be determined at a trial by jury and for reasonable attorney fees and costs.

## 2. COUNT II – INTRUSION UPON SECLUSION

58. Plaintiff repeats and realleges paragraphs 1 through 57 as though fully set forth herein.

59. The Restatement of the Law, Second, Torts §652B defines intrusion upon seclusion as, "[o]ne who intentionally intrudes…upon the solitude or seclusion of another, or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person."

60. According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

61. Defendant intentionally interfered, physically or otherwise, with the solitude and seclusion of Plaintiff, namely by engaging in unlawful and intrusive communications.

62. Defendant intentionally caused harm to Plaintiff's emotional well-being by engaging in highly offensive conduct in the course of collecting its debt, and thereby invaded and intruded upon Plaintiff's rights to privacy.

63. Plaintiff has a reasonable expectation of privacy in his solitude, seclusion, and/or private concerns and affairs.

64. These intrusions and invasions against Plaintiff by Defendant occurred in a way that would be highly offensive to a reasonable person in that position.

65. Defendant received notice stating it was no longer to contact Plaintiff as he was represented by counsel and revoked his consent to be contacted on his cellular telephone.

66. As a result of such invasions of privacy, Plaintiff is entitled to actual damages in an amount to be determined at trial from Defendant.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure 38, Plaintiff hereby demands a trial by jury for all issues of triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, BRIAN VANDEVELDE respectfully requests this Honorable Court:

    a. Declare the practices complained of herein are unlawful the aforementioned statute (the TCPA);

    b. Award Plaintiff statutory damages of $1,500.00 pursuant to 47 U.S.C. §227(b)(3)(C) for each and every violation;

    c. Pursuant to 47 U.S.C. §227(b)(3)(A), award Plaintiff injunctive relief prohibiting such conduct in the future;

    d. Award Plaintiff actual and punitive damages for Defendant's intrusion upon Plaintiff's seclusion;

    e. Award Plaintiff punitive damages pursuant to NRS 42.005;

    f. Any other relief that the court deems appropriate and proper.

Date: August 11, 2021

Respectfully submitted,

By: /s/ Nicholas M. Wajda
**Law Offices of Nicholas M. Wajda, Esq.**
Nicholas M. Wajda (State Bar No. 11480)
871 Coronado Center Drive
Suite 200
Henderson, NV 89052
Telephone: 702-900-6339
Facsimile: 866-286-8433
Email: nick@wajdalawgroup.com